UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 08-22548-CIV-KING/BANDSTRA

**DEBORAH PINDER,**

    Plaintiff,

v.

**BAHAMASAIR HOLDINGS LIMITED, INC.,** a foreign corporation,

    Defendant.

_____/

**PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO LIABILITY**

Plaintiff, Deborah Pinder, by and through undersigned counsel and pursuant to Fed. R.Civ. P. 56 and Local Rule 7.5, hereby moves for entry of an Order of Partial Summary Judgment as to Liability, in favor of Pinder and against Defendant Bahamasair Holdings Limited, Inc. ("Bahamasair"). The evidence filed in support of this Motion is taken exclusively from the deposition testimony (and exhibits) of Bahamasair's two main witnesses.

**INTRODUCTION**

This case arises out of the unlawful and retaliatory termination of Plaintiff Deborah Pinder by Defendant Bahamasair, in direct and unapologetic violation of Florida's Whistleblower Act ("FWA"), Fla. Stat. § 448.101, *et seq*. On April 15, 2008, Bahamasair Flight 230, from Miami to Nassau, Bahamas, was secured for departure without an accurate passenger manifest being transmitted to Customs. Specifically, a passenger was on board the secured flight who had been incorrectly checked in using a different name and passport. Bahamasair admits that the correct manifest was sent only *after* Flight 230 was secured, despite the fact that federal

homeland security regulations (known as APIS) mandate that a proper passenger manifest be transmitted to Customs *prior* to the securing of the aircraft.  *See* 19 C.F.R. § 122.75a.

The day after Pinder witnessed this obvious and unlawful breach of homeland security regulations, she mailed a detailed letter entitled "Incident Report of APIS Breach" to both senior management at Bahamasair and to the Transportation Safety Administration ("TSA") officer in charge of Miami International Airport.  On May 13, 2008, Pinder was informed via letter that she was being terminated by Bahamasair because she mailed the letter to the TSA.  These facts are undisputed and, quite shockingly, Bahamasair has now enthusiastically and unapologetically embraced its retaliatory firing of Pinder.  In this non-jury case, the Court can reach only one conclusion – summary judgment for Pinder is appropriate.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Pinder was an employee of Bahamasair for over 25 years.  (Deposition of John Fowler[1] ("Fowler Depo."), attached hereto as Exhibit "A," at 76; Deposition of Stephanie Kerr-Teele[2] ("Teele Depo."), attached hereto as Exhibit "B," at 49).

2. At the time of her termination, Pinder was employed by Bahamasair as a "Customer Service Supervisor," a position in which she supervised five or six employees per shift. (Fowler Depo., at 15-16).

### APIS Regulations

3. Bahamasair is governed by, and required to follow, federal air safety laws and regulations.  Among these regulations are those implementing the Airline Passenger Information

---

[1] Mr. Fowler, Bahamasair's Chief Customer Service Officer, was produced as Bahamasair's corporate representative in this case.

[2] Ms. Kerr-Teele is Bahamasair's Regional Director for Florida.  (Teele Depo., at 7)

2

SARELSON & SHAFIR LLP, 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.sarelson-shafir.com

System ("APIS"), which are codified, with respect to departing aircraft, at 19 C.F.R. §§ 122.71, *et seq*.

4. Among other things, APIS regulations require that all airlines transmit proper and accurate passenger manifests to the appropriate government agency *prior* to an aircraft being secured for departure from the United States. (19 C.F.R. § 122.75a(b)(2); *see also* Teele Depo., at 10-11)

5. An aircraft being "secured" means that the aircraft doors are closed. (Teele Depo., at 11)

### The April 2008 Letter

6. On April 16, 2008, Pinder sent a signed letter ("the April 2008 letter") to her station manager, Glenda Pletscher. The April 2008 letter was also copied to several members of Bahamasair senior management, and to John Devine of the Transportation Security Administration ("TSA"). A true and correct copy of the April 2008 letter is attached hereto as Exhibit "C."

7. The April 2008 letter was titled "Incident Report of APIS Breach." (Exhibit "C")

8. In the April 2008 letter, among other things, Pinder reported a specific violation of APIS regulations by Bahamasair. (Exhibit "C;" *see also* Fowler Depo., at 21)

9. Specifically, Pinder reported that on April 15, 2008, Bahamasair's assistant manager at Miami International Airport ("MIA"), Sharon Jones, incorrectly processed a passenger named Randolph McClain for boarding on Bahamasair Flight 230 (hereinafter referred to as "Flight 230"). (Exhibit "C;" *see also* Fowler Depo., at 24)

10. Pinder noted in the April 2008 letter that Jones failed to enter any information on the flight manifest with respect to Mr. McClain. As a result, Mr. McClain's name failed to

3

appear on the flight manifest, despite the fact that Mr. McClain was actually aboard the aircraft. (Exhibit "C;" *see also* Fowler Depo., at 26)

11. Pinder further reported that Jones had checked in Mr. McClain using the name and passport number of another individual, who was not on the flight. (Exhibit "C;" *see also* Fowler Depo., at 27-28)

12. Bahamasair admits that Jones did, in fact, check in Mr. McClain using another person's name and passport number. (Fowler Depo., at 28, 30)

13. Flight 230 departed MIA without Bahamasair making any correction to the inaccurate manifest. (Fowler Depo., at 30)

14. Pinder was not involved in any way with Flight 230, other than reporting the APIS violation to Bahamasair senior management and to TSA. (Fowler Depo., at 39, 83; Teele Depo., at 74)

15. Flight 230 did not cause Pinder's termination; Pinder was terminated "for the [April 2008] letter, not the incident." (Fowler Depo., at 40)

**Pinder's Unlawful and Retaliatory Termination**

16. Pinder was informed of her termination by letter dated May 13, 2008 ("the termination letter"), a copy of which is attached hereto as Exhibit "D."

17. According to the termination letter, Bahamasair determined that "further and more severe disciplinary action is warranted based on [Pinder] sending a copy of the [April 2008] letter to the TSA." (Exhibit "D;" *see also* Fowler Depo., at 51)

18. Bahamasair believed that Pinder's "motive" in sending the April 2008 letter to TSA "was malicious and that [Pinder's] intent was to harm the company." (Exhibit "D;" *see also* Fowler Depo., at 52)

4

19. Bahamasair has no evidence that Pinder intended to harm the company. (Fowler Depo., at 80)

20. Prior to her termination, in January 2008, Pinder received a performance evaluation from Bahamasair in which she received an overall score of 32 points out of a possible 35 points. Pinder was regarded as an "excellent" employee by Bahamasair in January 2008. (Fowler Depo., at 66-69, 76-77)

21. Pinder was qualified to perform her job responsibilities, and had no job performance issues at the time of her termination. Pinder's job performance was not a factor in her termination. (Fowler Depo., at 73-74)

22. TSA received a signed copy of the April 2008 letter. (Fowler Depo., at 77-78)

23. Bahamasair was not concerned about the security breaches detailed in the April 2008 letter; rather, Bahamasair was specifically concerned that the April 2008 letter could potentially expose the company to fines and/or regulatory action. (Teele Depo., at 87-89, 99-100; *see also* April 24, 2008 letter from Cornel Mortimer (Bahamasair's Director of Human Resources) to Stephanie Kerr-Teele, attached hereto as Exhibit "E," and May 2, 2008 memorandum from Mr. Fowler to Ms. Teele, attached hereto as Exhibit "F")

24. Bahamasair fired Pinder solely because of the April 2008 letter. (Fowler Depo., at 17-19; Teele Depo., at 18, 114-15)

25. Had Pinder not sent a copy of the April 2008 letter to the TSA, Bahamasair would not have terminated Pinder. (Fowler Depo., at 117)

**Bahamasair's Pattern of Continuous APIS Violations**

26.     In the April 2008 letter, Pinder reported on Bahamasair employees being routinely permitted "to intentionally undermine both Bahamasair and U.S. border security with impunity." (Exhibit "C")

27.     Also in the April 2008 letter, Pinder expressed concern regarding whether "Bahamasair's management is serious about operating the national flag carrier within the parameters and regulations of the U.S. jurisdiction and the Homeland Security Department[.]" (Exhibit "C")

28.     Between August 23, 2002 and April 7, 2008 – just over one week prior to Pinder's April 2008 letter – Bahamasair was cited and/or fined for twenty-four (24) separate statutory and regulatory violations of various APIS and other air safety laws and regulations. (*See* spreadsheet detailing violations and fines, produced by U.S. Customs & Border Protection and attached hereto as Exhibit "G;" *see also* documents and correspondence regarding Bahamasair's repeated regulatory and statutory violations, attached hereto as composite Exhibit "H;" Fowler Depo., at 85-86, 89-90, 101-05 (testimony regarding multiple APIS violations); Teele Depo., at 21-26, 30-49 (same))

**MEMORANDUM OF LAW**

**I.      Summary Judgment is Appropriate Because Bahamasair
         Concedes All Elements of Pinder's Claim**

Summary judgment is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the record as a whole could not lead a rational

6

fact-finder to find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Because Pinder bears the burden of proof at trial, she must demonstrate that "on all the essential elements of [her] case on which [she] bears the burden of proof at trial, no reasonable jury could find for [Bahamasair]." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). "Once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). A mere scintilla of evidence in support of Bahamasair's position would be insufficient to defeat a motion for summary judgment; if the evidence is merely colorable or is not significantly probative, summary judgment for Pinder is proper. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 252 (1986).

**II.**     **Bahamasair Violated Florida's Whistleblower Act When it Terminated Pinder for Objecting to Bahamasair's Repeated Violations of the APIS Regulations**

Florida's Whistleblower Act was enacted "to protect private employees who report or refuse to assist employers who violate laws enacted to protect the public," *Golf Channel v. Jenkins*, 752 So. 2d 561, 562 (Fla. 2000), and is "to be construed liberally in favor of granting access to the remedy." *Molenda v. Hoechst Celanese Corp.*, 60 F.Supp. 2d 1294, 1299 (S.D.Fla. 1999) (Seitz, J.); *Schultz v. Tampa Elec. Co.*, 704 So. 2d 605, 606 (Fla. 2d DCA 1997) (courts are "required to construe the whistle blower act liberally because it is a remedial statute."). The relevant portion of the FWA states that, "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate

7

in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3).

There are three elements to Pinder's FWA claim: 1) she engaged in statutorily protected conduct; 2) she was subject to an adverse employment action; and 3) there was a causal connection between the protected conduct and the adverse employment action. *See Padron v. Bellsouth Telecom., Inc.*, 196 F.Supp. 2d 1250, 1255 (S.D.Fla. 2002) (King, J.).  Here, Bahamasair expressly concedes that it fired Pinder *because* of the April 2008 letter she wrote to Bahamasair's senior management and the TSA, and it also concedes that it was, in fact, in violation of the APIS regulations as alleged by Pinder.  Accordingly, there is no need for a trial on liability.

### A.   Pinder Engaged in Conduct Clearly Protected Under the FWA

#### 1)   Pinder's April 2008 Letter Constitutes an "Objection"

Pinder engaged in statutorily protected activity when, on April 16, 2008, she mailed a detailed letter entitled, "Incident Report of APIS Breach," to both Bahamasair's highest management officials <u>and</u> the TSA.  The relevant portions of the April 2008 letter are worth citing at length:

> I am writing to provide you with a detailed account of an Incident which occurred on the 15th of April, 2008, which was a **clear breach of both Homeland Security, specifically Transportation Security Administration (TSA), and Bahamasair security operations protocols.** Bahamasair Manager, Ms. Sharon Jones, processed Mr. Randolph McClain for travel on Bahamasair flight #230, on the aforementioned date. Once Mr. McClain had been checked In, and had gone through TSA security screening, Bahamasair Gate Agent, Mr. Ken Gittens discovered a red flag upon realizing that Mr. McClain had presented at gate G-4 for boarding on flight #230, with only a boarding pass, but without an e-ticket. There was no information entered on the flight's manifest pertaining to Mr, McClain. This prompted Mr. Gittens to look further into the matter. His inquiries revealed that Ms. Jones had checked in Mr. McClain using the name and passport number of a Mr. Marvin Musgrove, but no one by the name of Marvin Musgrove

8

SARELSON & SHAFIR LLP, 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.sarelson-shafir.com

had presented for boarding, or check-in for that matter, for flight #230. After realizing the **obvious violation of U.S. federal and commercial airline procedural protocols,** Ms. Linda Burrows went into the system to delete Mr. Musgrove's name, and replace it with the actual traveler, Mr. Randolph McClain. This correction was only made after the departure of flight #230.

I am aware of the negative impact that such breaches of security can have on the welfare of our airline, especially when it is revealed that employees of the airline are found to be **intentionally engaging in actions which undermine the airline's efforts to operate within TSA's guidelines**.

\* \* \*

It will be difficult, however, for such a culture to develop if it is realized that some of this company's employees and their livelihood can be callously disregarded, while others are allowed to **intentionally undermine both Bahamasair and U.S. border security with impunity.**

\* \* \*

The company's response to this matter will send a clear signal as to **whether Bahamasair's management is serious about operating the national flag carrier within the parameters of the rules and regulations of the U.S. Jurisdiction and the Homeland Security Department**….

(Exhibit "C") (emphasis added).[3]

In *Padron*, this Court held that, "**[t]he signing and sending of [a] letter detailing legal abuses by [Defendant] satisfies this [engaging in statutorily protected activity] prong.**" 196 F.Supp. 2d at 1255-56 (King, J.) (emphasis added). There, Judge King held that the plaintiff engaged in protected activity when she mailed – to Bellsouth management, the Federal Communications Commission and the Florida Public Service Commission – a letter detailing abusive and illegal sales practices at her employer, Bellsouth. *Id*. at 1254. Here, Pinder sent a similar letter detailing Bahamasair's rampant violation of aviation safety regulations to both

---

[3]   Exhibit "C" is an unsigned copy of the April 2008 letter. Bahamasair has never produced the signed copy that it received, but it admits that it did, in fact, receive a signed copy. (Fowler Depo., at 20)

9

SARELSON & SHAFIR LLP, 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.sarelson-shafir.com

senior management and the government agency responsible for overseeing those safety regulations. Pinder's letter speaks for itself – she objected vehemently and repeatedly to Bahamasair's ongoing violations of air safety regulations – and she was terminated because of it.[4]

Bahamasair's only response to this argument, based upon discussions with counsel and based upon Bahamasair's discovery, appears to be that Pinder's letter does not constitute an "objection."[5] However, Bahamasair has no legal support for this incredible argument, and the only purported "factual support" for this argument is apparently the fact that the word "object" does not appear anywhere in the April 2008 letter. (*See* Teele Depo., at 81-83). There is no intellectually defensible argument that a letter objecting to violations of law is not a protected letter unless the word "object" is used by the whistleblower, especially in light of this Court's obligation to construe the statute liberally in favor of the plaintiff.

Based upon these undisputed facts, Pinder objected to Bahamasair's rampant violation of the APIS regulations, and clearly engaged in statutorily protected activity when she sent a detailed letter to both senior management and the government. The factfinder, in this case the Court, can reach only one conclusion.

---

[4] *See also Rutledge v. Suntrust Bank*, 2007 WL 604966, at *5 (M.D.Fla. Feb. 22, 2007) (employee's verbal report to supervisor regarding unlawful conduct constituted "statutorily protected expression" under FWA).

[5] Whether the letter constitutes an "objection" under the FWA is an issue of law, properly determinable at the summary judgment stage. *See Rectory Park, L.C. v. City of Delray Beach*, 208 F.Supp. 2d 1320, 1329 (S.D.Fla. 2002) ("Interpretation of a statute or ordinance is a question of law and therefore may be determined by the court on a motion for summary judgment."); *see also Maloy v. Phillips*, 197 B.R. 721, 722 (M.D.Ga. 1996) ("Where the material facts are undisputed and the question is primarily one of law, <u>such as interpreting a statute and applying it to a given set of facts</u>, disposition by summary judgment is particularly appropriate.") (emphasis added).

10

**2)       Bahamasair Violated a "Law, Rule or Regulation"**

Bahamasair violated a "law, rule or regulation" when, as detailed in Pinder's April 16 letter, Bahamasair failed to transmit a proper passenger manifest to Customs prior to the securing of Flight 230, from Miami International Airport to Nassau, Bahamas, on April 15, 2008. *See* 19 C.F.R. § 122.75a. Bahamasair, like all commercial aircraft carriers operating within the United States, is subject to federal airline safety regulations. Among the many regulations to which Bahamasair is subject are the Advance Passenger Information System ("APIS") regulations. APIS was implemented following and in response to the September 11 terrorist attacks and it includes, among other things, the so-called "no-fly list" to keep terrorists and suspected terrorists off aircraft flying within U.S. airspace. (Teele Depo., at 48-49).

Pursuant to APIS, a proper and accurate passenger manifest for international flights departing the United States "must" be transmitted by the airline to Customs "no later than the securing of the aircraft." 19 C.F.R. § 122.75a(b)(2)(ii).[6] An aircraft is "secured" when its doors are closed with everyone on board. (SMF ¶ 5; *see also* 19 C.F.R. § 122.49a(a). Simply put, the APIS regulation is violated when the manifest is not sent prior to the time the aircraft is secured – and that is exactly what happened here. *Id.*

Pinder's April 2008 letter stated that Flight 230's accurate passenger manifest was sent only after the aircraft was secured. Bahamasair's corporate designee, Mr. Fowler, testified that

---

[6]   This subsection applies to airlines that use an "interactive individual passenger information transmission" system after being properly certified by Customs. *See* 19 C.F.R. § 122.75a(b)(1)(ii)(C). Ms. Kerr-Teele testified that Bahamasair uses this advanced system, but Bahamasair has not provided any documentation, including the mandatory certification by Customs, to support her testimony. (Teele Depo., at 12). For purposes of this litigation, however, it does not matter because the less advanced systems require even earlier transmission of the passenger manifest. Here, the passenger manifest was transmitted after the aircraft was secured, which is always illegal no matter what system the airline uses.

11

SARELSON & SHAFIR LLP, 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.sarelson-shafir.com

Pinder's allegation was correct – the accurate manifest was sent after the aircraft was secured. (Fowler Depo., at 28-30). Ms. Kerr-Teele, Bahamasair's Director of Florida Operations and the person who investigated the allegations, also testified that Pinder's version of the events in her April 2008 letter were correct. (Teele Depo., at 75-76). It is undisputed that the violation of the APIS regulation that Pinder complained about actually occurred in exactly the same manner in which she alleged it happened.[7]

Despite Bahamasair's own undisputed testimony that the accurate passenger manifest was not sent prior to the time Flight 230 was secured, it has continued to advance an unsubstantiated and inconsistent theory that it did not actually violate the APIS regulations. Mr. Fowler testified that an airline has 24 hours to "cure" an APIS violation. (Fowler Depo., at 27). However, despite repeated requests for supporting documents, Bahamasair has provided no support, legal or factual, for Mr. Fowler's testimony.[8] To the contrary, despite being present for Mr. Fowler's deposition, Ms. Kerr-Teele testified that an airline may transmit a passenger manifest up to thirty minutes (not 24 hours) *after* an aircraft is secured. (Teele Depo., at 11).

Even putting aside Bahamasir's inability to consistently describe this purported "cure" period, the authority Ms. Kerr-Teele cited as the basis for her testimony is contained in a non-binding "field operations manual" and, even assuming the field operations manual has the effect

---

[7] Flight 230 was not an isolated incident and Pinder's April 16 letter was not limited to Flight 230. Bahamasair admits that her letter spoke broadly to Bahamasair's repeated and continuing violations of the APIS regulations and to U.S. airline regulations generally. (Teele Depo., at 80). Customs has cited Bahamasair at least 24 times since 2002 for violating the APIS regulations, and both Mr. Fowler and Ms. Kerr-Teele testified that the airline was cited frequently by Customs for violating APIS. (SMF ¶ 28). Each of these law violations constitute a "law, rule or regulation" within the meaning of the FWA and Pinder's April 16 letter constitutes protected activity with respect to all of these violations.

[8] Fowler also testified that Bahamasair could not have violated the APIS regulations because it never received a fine from TSA. (Fowler Depo., at 99). This is pure tautology – akin to arguing that a driver is not speeding unless he gets caught.

12

SARELSON & SHAFIR LLP, 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.sarelson-shafir.com

of law (which it does not), it is inapplicable to the circumstances of Flight 230.[9]  Both Fowler and Kerr-Teele admitted that Flight 230's accurate passenger manifest was not sent until after the aircraft was secured, but neither could explain why Bahamasair's admitted failure to comply with § 122.75a was somehow not a violation of the APIS regulations.

Pinder has extensively researched both the APIS regulations and TSA's published policies and procedures, but has been unable to locate <u>any</u> evidence that any applicable purported "cure" period – whether for 24 hours, 30 minutes, or any other unit of time – exists.  Despite repeated requests to Bahamasair, both formally through requests for production and informally through letters and emails between counsel, Bahamasair has failed to unearth <u>any</u> legal or factual support for its argument that the APIS regulations were not actually violated.  There is literally no record evidence – much less the "significant probative evidence" required to defeat summary judgment – of any exception to the "law, rule or regulation" that Bahamasair admittedly violated.  *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (mere conclusions and unsupported factual allegations are legally insufficient to defeat summary judgment motion).[10]

---

[9]  Bahamasair apparently is relying solely on a field manual entitled, "CBP Air APIS Guide – System Identified Errors and Manifest Sufficiency Rates" produced by Customs and dated April 2008.  (Exhibit "I")  The manual states that "a carrier employing one or both of the interactive transmission options (batch or AQQ) will transmit to the CBP [Customs & Border Protection] system no later than 30 minutes after the securing of the aircraft, a message identifying passenger data for *any passenger that checked in for the flight but was not boarded for any reason*." (emphasis added).  Even assuming this statement has the force of law (which it does not), it is completely inapposite because Ms. Kerr-Teele admits that Flight 230 concerned a passenger who boarded an aircraft without being included on the manifest – it did not concern a passenger who "checked in for the flight but was not boarded for any reason."  (Teele Depo., at 134).

[10]  Even if this mysterious "cure" period does exist, there is no record evidence that Bahamasair complied with it.  Bahamasair produced a purportedly corrected passenger manifest for Flight 230.  (*See* Exhibit "J")  It is impossible, however, to discern from this document when this purportedly corrected manifest was transmitted to Customs, if ever, and Bahamasair has no other evidence as to this issue.  (*See also* Exhibit "K" (April 22, 2009 e-mail from Bahamasair's

13

**B.      Pinder's Termination was an Adverse Employment Action**

Bahamasair does not and cannot dispute that Pinder was subjected to an adverse employment action when she was terminated on May 13, 2008. (SMF ¶¶ 16-25) "Retaliatory personnel action," as defined in the FWA, expressly includes the "discharge" of an employee. Fla. Stat. § 448.101(5); *see also Padron*, 196 F.Supp. 2d at 1256 ("It is undisputed that Plaintiff was fired and that termination is an 'adverse employment action.'"). The second element of Pinder's FWA claim is satisfied and undisputed.

**C.      Pinder was Terminated Because she Objected to Bahamasair's Violation of the APIS Regulations**

Bahamasair terminated Pinder on May 13, 2008 solely because she sent her April 2008 letter to the TSA, as expressly stated in her termination letter:

> The purpose of this letter is to advise you that we have decided further and more **severe disciplinary action is warranted based on your sending a copy of your [April 2008] letter to the TSA**. We believe your motive in doing so was malicious and that your intent was to harm the Company. The Company does not want employees who desire to cause it harm. **Accordingly,** this letter is to advise that **your employment is terminated effective May 13, 2008**.

(Exhibit "D") (emphasis added). It would be difficult to find more direct evidence that an employer fired an employee for whistleblowing – this is **exactly** why the FWA was enacted.

Equally shocking is how Bahamasair has unapologetically embraced the fact that it terminated Pinder solely because it was concerned that her objection to its unlawful activities

---

counsel, confirming the foregoing))  Bahamasair also produced an unauthenticated and highly suspicious page from a supposed "logbook" that purports to contain a notation that a corrected manifest was transmitted, but the logbook provides no information on <u>when</u> this corrected manifest was purportedly sent.  (See Exhibit "L").  Not only is Bahamasair unable to demonstrate the <u>existence</u> of a "cure" period, but Bahamasair cannot even prove that the phantom "cure" period would <u>apply</u> in this case if it did exist.  *See, e.g., LaRoche v. Denny's, Inc.*, 62 F.Supp.2d 1366, 1371 (S.D.Fla. 1999) (suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment).

14

may have exposed the company to potential citations and/or fines. (SMF ¶ 23). When asked, "Why was Deborah Pinder terminated by Bahamasair?[,]" Mr. Fowler responded, incredibly, that she was terminated because "she sent a letter to the TSA." (Fowler Dep. p. 17; p. 40). He further admitted that this was "the only reason that she was terminated," (Fowler Dep. p. 19), and that Pinder would not have been terminated on May 13, 2008 but for her April 2008 letter. (SMF ¶¶ 24-25).

Ms. Kerr-Teele testified that Bahamasair was only concerned with investigating Pinder (Teele Depo., at 88, 96) and that Bahamasair "didn't express any concerns about the underlying merits of Ms. Pinder's allegation." (Teele Depo., at 88). In fact, the employee who actually committed the APIS violation, Sharon Jones, was not disciplined or punished in any way. (Fowler Depo., at 60; Teele Depo., at 74-75).

Based upon Bahamasair's Termination letter and testimony, it is clear and undisputed that Pinder's termination was a direct and proximate result of her engagement in statutorily protected activity. Accordingly, the third and final element of Pinder's FWA claim is conclusively established.

SARELSON & SHAFIR LLP, 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.sarelson-shafir.com

## **CONCLUSION**

Bahamasair admits that it terminated Pinder as a result of her sending a letter to senior management and the TSA detailing Bahamasair's routine and continuing violation of federal APIS regulations, and Bahamasair admits that it actually violated the APIS regulations as alleged by Pinder. There is no evidence to the contrary and thus there can be only one outcome – no trial on liability is necessary.

For the foregoing reasons, Pinder respectfully requests this Court to grant this Motion, enter partial summary judgment in favor of Pinder and against Bahamasair as to liability, order that this action proceed to trial solely on the issue of damages, and grant any further relief this Court deems just and proper.

Respectfully submitted,

   /s/ Michael A. Shafir
Matthew Seth. Sarelson, Esq.
Fla. Bar No. 888281
Michael A. Shafir, Esq.
Fla. Bar No. 660671
**SARELSON & SHAFIR LLP**
1401 Brickell Avenue, Suite 510
Miami, Florida 33131
305-379-0305
800-421-9954 (fax)
msarelson@sarelson-shafir.com
mshafir@sarelson-shafir.com

16

SARELSON & SHAFIR LLP, 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.sarelson-shafir.com

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on April 27, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the forgoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                /s/ Michael A. Shafir
              Michael A. Shafir, Esq.

**Service List**
**Case No.: 08-22548-CIV-KING/BANDSTRA**

Stuart A. Goldstein, Esq.
Fla. Bar 223735
**Law Offices of Goldstein and Sordo**
9350 S. Dixie Highway, 10th Floor
Miami, Florida 33156
(305) 670-1222
(305) 670-7065 (fax)
Sgoldst219@aol.com
Counsel for Bahamasair

SARELSON & SHAFIR LLP, 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.sarelson-shafir.com